# Morgan *v*. The State.

## *Manslaughter.*

(Decided June 10, 1913.   63 South. 21.)

1. *Pleading; Withdrawal; Abatement.*—The provisions of section 23, Acts 1909, p. 317, are mandatory, and a trial court has no power to permit a defendant, who has previously pleaded guilty at his arraignment, to withdraw such plea at his trial, and file a plea in abatement.

2. *Evidence; Res Gestae.*—Where a defendant is jointly indicted with his brother for murder, but separately tried, an epithet uttered by one brother during the difficulty to the deceased was a part of the res gestae, and admissible as against the other.

3. *Witnesses; Knowledge; Examination.*—Where the defendant is connected with the difficulty by other evidence, the evidence of a witness who saw the difficulty, but did not see the ·defendant, or if he saw him did not know him, is competent as against defendant.

4. *Homicide; Evidence.*—The evidence of family troubles of deceased was not admissible as showing the state of mind of deceased when the difficulty was in no way connected with such family trouble.

5. *Appeal and Error; Presumption; Instruction.*—Where it nowhere appears from the bill of exceptions that the charges requested and refused were requested before the jury retired, it will be presumed on appeal that the requests were refused, if good, because not requested in time.

APPEAL from Lawrence Circuit Court.

Heard before HON. D. W. SPEAKE.

Hubert Morgan was convicted of manslaughter, and he appeals. Affirmed.

While Mrs. Sciverly was on the stand, the solicitor asked her what did Pearce say. Over objection, witness was permitted to answer: "Pearce called him a vile name (repeating it), and Arthur picked up a breast yoke and made him take it back. I told Arthur to lay it down, and he did, when Hubert Morgan, defendant, ran up to him and told him to stand back, and Arthur hit him with a parasol, and they went to fighting, and Pearce ran up and stuck his knife in him." Turner testified that he knew Pearce Morgan, but did not know Hubert Morgan; that he was at College Grove Church the day Arthur Sciverly was killed, and saw part of the difficulty, that part being the striking of Morgan with an umbrella, he did not know which one, when Pearce Morgan cut him. It appears on cross-examination that he did not see defendant at all, or if he saw him, did not know him to be the defendant.

CHENAULT & CHENAULT, for appellant. No brief reached the Reporter.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The provisions of section 23, Acts 1909, p. 317, are mandatory, and a plea of not guilty shuts off a plea in abatement. In any event, the plea was not based on the only statutory ground.—*Odom v. State,* 1 Ala. App. 68; *Grandall v. State,* 2 Ala. App. 112; *Collins v. State,* 3 Ala. App. 64. There was evidence to support the theory of conspiracy, and hence, the statements attributed to the co-defendant were properly admitted against defendant.—*Boswell v. State,* 1 Ala. App. 178; *West v. State,* 168 Ala. 1; *Collins v. State,* 138 Ala. 57; *Johnson v. State,* 87 Ala. 39. It does not appear that the charges were requested before the jury retired, and the presumption is indulged that that was the basis of the court's refusal to give them.

THOMAS, J.—The defendant was indicted for murder. On August 22, 1912, the same term of the court at which he was indicted, he was duly arraigned, and then and there pleaded not guilty to the indictment; whereupon the court set August 27, 1912, as the day for the trial of the case, and proceeded in all respects as required by law to draw a special jury of 40 persons, which, with the regular jurors (36 in number) drawn and summoned for the week of the trial, were to and did constitute the list from which the jury was to be selected for the trial of the case. On August 27, 1912, when the case was called for trial, the defendant asked leave to withdraw his plea of "not guilty" (which he had interposed, as said, on his arraignment five days before) and to file a plea in abatement, setting up in effect that the

grand jury which found the indictment was not organiz-
ed as required by law in particulars set up in the plea.
The court granted the defendant the leave so prayed,
and then on motion of the solicitor struck the plea in
abatement; whereupon the defendant again filed his
plea of not guilty, and the trial proceeded, and defend-
ant was convicted.

Among the alleged errors we are called on to review
is that of the court in striking the plea in  abatement.
Whether it was meritoriously done or not, we need not
consider, since we are of opinion that the  court  was
without authority in the first instance to permit the in-
terposition of the plea at the trial, when the defendant
had previously, on his arraignment, pleaded not guilty.
We are aware of the general rule that the trial .court
ordinarily has the power, which it may exercise in its
sound discretion, to allow a party, who has not pleaded
in the order required by the rules of pleading, to with-
draw pleading already filed, for the purpose of filing
other pleading which should have preceded in point of
filing that which is allowed to be withdrawn; and this
rule would obtain here, but for the fact that in this in-
stance the Legislature by express statutory provision,
mandatory in terms, has seen fit to withdraw that pow-
er from trial courts.   Section 23 of the jury law (Acts
Sp. Sess. 1909, p. 315) provides, among other things, as
follows: "Any plea in abatement to an indictment must
be filed at the first term at which the indictment was
found, if the accused has been arrested, or, if the accus-
ed has not been arrested, such plea in abatement must
be filed at the first term at which it is practicable after
defendant has been arrested, *and in all cases such plea
in abatement must be filed before the plea to the merits.*"
The last clause—the part italicized—is applicable here,
and renders nugatory the act of the trial court in per-

[Morgan v. The State.]

mitting the plea in abatement to be filed at the trial, when a plea of not guilty had been previously interposed on arraignment five days before. The purpose of this statutory requirement, in cases where the law makes it necessary to draw and summon a special jury for the trial, is both plain and wise. Its design is to save the county the useless expense—per diem and mileage—of the attendance of special jurors, in cases where the plea in abatement to the indictment is good. If the plea is filed, as the statute requires, on arraignment, and is then sustained by the court (which is often done without the intervention of a jury), there is then no necessity, of course, for drawing or summoning a special jury for a future day to try the case, since the case is at an end. If, on the other hand, the plea is not filed when defendant is arraigned, but he then pleads not guilty (thereby necessitating the drawing of a special jury to be summoned for a future day to try the case), then on that day to permit him to file a plea in abatement would, if the plea were good, put the county to the large and needless expense of a special jury, which would have probably been saved if the plea had been filed when defendant was arraigned. While we are of opinion that the trial court did not err in its rulings on the plea (Acts Sp. Sess. 1909, p. 315, § 23; *Collins v. State,* 3 Ala. App. 65, 58 South. 80), yet we refrain from a discussion of and decision upon that question, because, as shown, it is not properly before us.

The question, "What did Pearce say?" propounded by the solicitor to the state's witness Delmar Sciverly, called for and elicited evidence clearly admissible as a part of the res gestæ, if not also otherwise admissible.—1 May. Dig. pp. 772, 773; *Blount v. State,* 49 Ala. 381. Pearce, referred to in the question, was jointly indicted with defendant, and, though not himself on trial, the

[Morgan v. The State.]

epithet applied by him to deceased, which the question brought out, was uttered during the course of the same difficulty in which deceased was killed, and into which the defendant (said Pearce's brother) subsequently, but before the killing, entered in aid of his brother, as some of the evidence tended to show.

The court committed no error in overruling the motion of the defendant to exclude the whole testimony of the state's witness Will Turner. The sole ground of the motion was that the testimony of the witness did not show that defendant had any connection with the difficulty at all. It often happens, and is most frequently true, that the state is unable to prove its whole case by a single witness; but this fact does not render the whole testimony of the witness inadmissible, if it relates a single material fact in the case of the state. Other witnesses for the state did connect the defendant with the commission of the crime.

The defendant offered to prove by one witness that deceased at the time he was killed, on account of family troubles, was living separate and apart from his wife. The defendant's counsel insists that such evidence was relevant as a circumstance which the jury might consider as tending to show that the deceased, during the fatal difficulty, was in a reckless state of mind on account of his family troubles—although the difficulty was not had with any member of his family, and was not about or in any way connected with such family troubles, but arose out of the fact that defendant's brother, Pearce, was imposing on or hectoring deceased's younger brother, an epileptic, who called on deceased for assistance. The mere statement of the contention is sufficient for the legal mind to see, without the necessity of discussion, that the action of the court, in declining to permit evidence of the troubles of deceased with

his own wife, was entirely proper. It is true that in some cases of homicide it becomes material to show that deceased was a violent, reckless, and bloodthirsty man; but the law does not permit the fact to be established by the method of proof here attempted.

The defendant requested in writing a number of charges, which were refused; but the bill of exceptions nowhere shows that these refused charges were requested before the jury retired. They cannot, therefore, be reviewed; since it will be presumed in favor of the ruling of the trial court, when the record does not show to the contrary, that the charges, if good, were refused because not requested before the jury retired.—*Donahoo & Mathews v. Tarrant,* 1 Ala. App. 446, 55 South. 270; 2 May. Dig. p. 576, § 26.

We have discussed the only errors urged, we find none in the record, and the judgment of conviction is consequently affirmed.

Affirmed.

